UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEVEN GIANESINI,<br><br>             Plaintiff,<br><br>   v.<br><br>THE BOEING COMPANY,<br><br>            Defendant. | C21-187 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on the Motion to Dismiss, docket no. 15, filed by Defendant The Boeing Company ("Boeing"). Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**<u>Background</u>**

For several years, Plaintiff Steven Gianesini worked for Boeing, as a member of the Network Design Team, in Kent, Washington. First Amended Complaint ("FAC") at ¶¶ 2.6, 3.1 (docket no. 10). Plaintiff alleges that discriminatory conduct on account of his national origin and disabilities began in May 2017. *Id*. at ¶¶ 3.3–3.25. In early January 2018, Plaintiff overheard a Boeing manager tell other Boeing employees that "[y]ou know how those Italians are, you gotta get em while their [sic] weak." *Id*. at ¶ 3.25.

ORDER - 1

Plaintiff, who is of Italian descent, believed that the manager's comment was directed at him. Id. at ¶¶ 3.25, 4.62. Plaintiff allegedly reported the incident to Boeing's human resources department on January 24, 2018; but human resources concluded that Plaintiff's report was "unfounded" and told Plaintiff that he is "not going to have many friends if [he] continue[s] to ruffle feathers" at Boeing. Id. at ¶¶ 3.25, 3.26.

Boeing's treatment of Plaintiff allegedly caused him to suffer "prolonged stress" and "severe anxiety affecting his sleep, asthma, health, and voice," so he decided to take a leave of absence. Id. at ¶ 3.29. On February 14, 2018, Plaintiff resigned from Boeing altogether. Id. at ¶ 3.30. Plaintiff alleges that, after Boeing determined that his report of discrimination was "unfounded," he "felt he had no choice but to resign from his position." Id.

On February 12, 2021, Plaintiff brought this action against Boeing in state court, asserting a single cause of action[1] for "discrimination . . . based on his national origin." Complaint at ¶ 4.2 (docket no. 1-1). After Boeing removed this diversity action to federal court, Plaintiff filed the FAC, docket no. 10, on March 15, 2021, asserting nine causes of action: (1) a national origin discrimination claim under Washington's Law Against Discrimination ("WLAD"), chapter 49.60 RCW; (2) a disability discrimination claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112; (3) a disability discrimination and failure to accommodate claim under WLAD; (4) a hostile work environment claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

---

[1] For ease of reference, the Court will also refer to these causes of action as "claims."

ORDER - 2

U.S.C. § 2000e; (5) a Title VII retaliation claim; (6) a state law claim for constructive discharge; (7) a Title VII claim for failure to maintain a harassment-free environment; (8) a state law claim for intentional infliction of emotional distress ("IIED"); and (9) a Title VII claim for race or national origin discrimination.  *See* FAC at ¶¶ 4.1–4.70.  Boeing now moves to dismiss the FAC.

**Discussion**

    **1.**    **Motion to Dismiss Standard**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  A complaint may be lacking because it fails to state a cognizable legal theory or because it fails to state sufficient facts under a cognizable legal claim.  *See* <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984).  In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor.  <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987).  If the Court dismisses the complaint, it must consider whether to grant leave to amend.  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000).

    **2.**    **Federal Claims (Second, Fourth, Fifth, Seventh, and Ninth Causes of Action)**

For the first time in the FAC, docket no. 10, Plaintiff asserts five claims under federal law, namely the ADA and Title VII.  Plaintiff now concedes that his "federal

claims cannot proceed due to [a] procedural deficiency for lack of filing with the [Equal Employment Opportunity Commission] within 300 days." Response (docket no. 19 at 17); *see* 42 U.S.C. §§ 2000e-5(e)(1), 12117(a). The Second, Fourth, Fifth, Seventh, and Ninth Causes of Action are DISMISSED with prejudice for failure to timely exhaust.

### 3. State Law Claim for Disability Discrimination and Failure to Accommodate (Third Cause of Action)

Plaintiff's claim for disability discrimination and failure to accommodate under WLAD, first asserted in the FAC, is time barred because it does not relate back to the allegations in the original Complaint. Federal Rule of Civil Procedure 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "Claims arise out of the same conduct . . . if they 'share a common core of operative facts' such that the plaintiff will rely on the same evidence to prove each claim." *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008). This requirement "is meant to ensure that the original pleading provided adequate notice of the claims raised the amended pleading." *Id.* at 1133 n.9.

Plaintiff does not dispute that he was required to assert the WLAD claim for disability discrimination within three years of the date on which he resigned, February 14, 2018. Response (docket no. 19 at 17–18); *see also* <u>Douchette v. Bethel Sch. Dist. No. 403</u>, 117 Wn.2d 805, 816, 818 P.2d 1362 (1991) (en banc) (concluding that the three-year limitations period for WLAD claims started to run on the date that the employee

ORDER - 4

resigned).² Nor does Plaintiff dispute that he asserted a disability discrimination claim for the first time in the FAC, on March 15, 2021, which is more than three years from the date of his resignation.³ Response (docket no. 19 at 17–18). Plaintiff instead argues that the disability discrimination claim relates back to the conduct alleged in the original Complaint, which was filed on February 12, 2021, because all of the conduct was "at the same workplace" and "occurred by the same persons." *Id*. at 17.

The original Complaint, docket no. 1-1, which asserted a single state law claim for national origin discrimination, did not include any allegations indicating that Plaintiff suffered from disabilities or that Boeing engaged in conduct that gives rise to Plaintiff's claim for disability discrimination or failure to accommodate. Accordingly, the newly asserted disability discrimination claim in the FAC, docket no. 10, does not arise "out of the same conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," Fed. R. Civ. P. 15(c)(1)(B). Plaintiff attempts to assert "a new legal theory depending on different facts, not a new legal theory depending on the same facts." *Williams*, 517 F.3d at 1133. The Third Cause of Action is DISMISSED with prejudice as time barred.

---

² Boeing maintains that the "standard rule is that the claim accrues when the alleged discrimination occurs," not when the consequences of the acts manifest themselves. Reply (docket no. 22 at 7 & n.4). While that might be the prevailing federal rule, *see Del. State Coll. v. Ricks*, 449 U.S. 250 (1980), the Washington Supreme Court has held that WLAD claims for discrimination and wrongful discharge might accrue on the date of the employee's resignation. *See Douchette*, 117 Wn.2d at 816.

³ Plaintiff does not argue that equitable grounds exist to toll the limitations period. *See Douchette*, 117 Wn.2d at 813.

ORDER - 5

### 4. State Law Claims for National Origin Discrimination, Constructive Discharge, and IIED (First, Sixth, and Eighth Causes of Action)

#### a. Relation Back of Amendments

Plaintiff's remaining state law claims for national origin discrimination under WLAD, constructive discharge, and IIED were either pleaded in the original Complaint, or they were pleaded in the FAC and relate back to the allegations set out in the Complaint.

Plaintiff's original Complaint, docket no. 1-1, asserted one claim for "discrimination . . . based on his national origin through descent and heritage of being Italian," in "violation of state law." Complaint at ¶¶ 4.2, 5.1. As originally pleaded, those allegations are sufficient to put Boeing on notice that Plaintiff is asserting a WLAD claim for national origin discrimination. *See* Fed. R. Civ. P. 8(a)(2); <u>Williams</u>, 517 F.3d at 1130. Moreover, the FAC, docket no. 10, expressly asserts the WLAD claim and relies on the same conduct that was alleged in the original Complaint. *See* Fed. R. Civ. P. 15(c)(1)(B).

The claims for constructive discharge[4] and IIED also relate back to the allegations in the Complaint. That original pleading alleged that after the Boeing manager made a derogatory comment about Plaintiff's Italian heritage, Plaintiff reported that comment to Boeing, and human resources "took no action" and told Plaintiff "that if [he] report[s]

---

[4] As explained in Section 4(c), below, Washington courts do not recognize a stand-alone claim for *constructive* discharge, but rather a claim for *wrongful* discharge in violation of public policy based on constructive discharge.

these things . . . , [he is] not going to have that many friends and . . . will continue to ruffle feathers." Complaint at ¶¶ 3.4, 4.3. Plaintiff further alleged that Boeing's actions "forced him to leave his employment" and he "has been damaged" as a result. <u>Id</u>. at ¶ 4.4. The new allegations in the FAC for constructive discharge and IIED arise out of the same conduct and occurrences that were alleged in the Complaint, <u>see</u> Fed. R. Civ. P. 15(c)(1)(B).

### b. Timeliness of Claims

The Court, however, cannot decide whether the WLAD, wrongful discharge, or IIED claims were timely filed on February 12, 2021. Each claim is subject to a three-year statute of limitations. <u>See</u> RCW 4.16.080(2); <u>Antonius v. King County</u>, 153 Wn.2d 256, 261–62, 103 P.3d 729 (2004) (en banc) (applying RCW 4.16.080(2)'s limitation period to WLAD claims); <u>Barnett v. Sequim Valley Ranch, LLC</u>, 174 Wn. App. 475, 485, 302 P.3d 500 (2013) (same, to wrongful discharge claims based on constructive discharge); <u>Cox v. Oasis Physical Therapy, PLLC</u>, 153 Wn. App. 176, 192, 222 P.3d 119 (2009) (same, to IIED claims).

Under certain circumstances, the limitations period for these claims might not begin to run until the date of the employee's resignation. <u>See Douchette</u>, 117 Wn.2d at 816. For hostile work environment claims in particular, a court may consider "the entire time period of the hostile environment" to determine an employer's liability, "[p]rovided that an act contributing to the claim occurs within the filing period." <u>Antonius</u>, 153 Wn.2d at 264 (quoting <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 117 (2002)). "The standard for linking discriminatory acts together in the hostile work environment

ORDER - 7

1  context is not high." <u>Loeffelholz v. Univ. of Wash.</u>, 175 Wn.2d 264, 276, 285 P.3d 854

2  (2012) (en banc). For disparate treatment claims involving "discrete acts," however, "the

3  limitations period runs from the act itself." <u>See</u> <u>Antonius</u>, 153 Wn.2d at 264 (citing

4  <u>Morgan</u>, 536 U.S. at 108–113).

5      In this case, the FAC does not expressly indicate when Boeing informed Plaintiff

6  that his report of national origin discrimination was "unfounded," or whether Boeing took

7  any other action giving rise to these claims within the limitations period, i.e., on or after

8  February 12, 2018. <u>See</u> FAC at ¶¶ 3.25, 3.30. For these claims to be timely, Plaintiff

9  must allege facts plausibly showing that Boeing's acts, which give rise to his claims,

10 occurred within the filing period. <u>See</u> <u>Antonius</u>, 153 Wn.2d at 264. To the extent that

11 Plaintiff asserts a WLAD claim for hostile work environment,[5] Plaintiff must plausibly

12 allege that at least one of the acts contributing to the claim occurred within that period.

13 <u>See</u> <u>id</u>. at 264, 273. In light of the Court's ruling that the allegations in the FAC are also

14 insufficient to state a claim for relief, as explained in Section 4(c) below, the Court need

15 not and does not address whether the remaining state law claims are timely.

16           **c.    Failure to State a Claim for Relief**

17     Although the state law claims for national origin discrimination, constructive

18 discharge, and IIED were timely filed, the claims, as currently pleaded, are insufficient to

19 state a claim for relief under Rule 12(b)(6).

---

[5]Although Plaintiff has pleaded the WLAD claim based on national origin discrimination under a disparate treatment theory, <u>see</u> FAC at ¶¶ 4.1–4.3, Plaintiff also asserts that he was subjected to a hostile work environment, and resigned, because of that discrimination. <u>See id</u>. at ¶¶ 3.30, 4.23–4.24.

ORDER - 8

i. **National Origin Discrimination**

Although Plaintiff brings the WLAD claim for national origin discrimination (First Cause of Action) as a "disparate treatment" claim, FAC at ¶¶ 4.1–4.3, he also appears to assert that such discrimination amounted to a "hostile work environment," *id*. at ¶¶ 4.23–4.24, 4.63. Accordingly, the Court analyzes this WLAD claim under both legal theories.

With regard to the disparate treatment claim,[6] *see id*. at ¶ 4.3, Plaintiff fails to allege sufficient facts to plausibly establish a prima facie case. The FAC alleges that shortly before Plaintiff resigned, his manager said in front of Plaintiff and apparently directed at him, "you gotta get [Italians] while their [sic] weak," *id*. at ¶ 3.25. The FAC also alleges that Plaintiff "had been removed as the SharePoint administrator" and "was passed up for promotions" after Plaintiff reported "violations of law, including international law"; but "[o]ther persons, similarly situated, were not treated in the same manner as [Plaintiff] was being treated and instead were favored for their lack of reporting, failure to work (playing games during work), and ability to hear." *Id*. at ¶ 3.28. These allegations, standing alone, fail to plausibly show any connection between the national origin discrimination and the alleged adverse employment actions taken against Plaintiff. For example, Plaintiff has not alleged that after Boeing removed him from the

---

[6] "To establish a prima facie disparate treatment case, an employee must show that (1) he or she belongs to a protected class, (2) he or she was treated less favorably in the terms and conditions of employment, (3) a similarly situated employee outside the protected class received the benefit, and (4) the employees were doing substantially the same work." *Crownover v. State*, 165 Wn. App. 131, 147, 265 P.3d 971 (2011).

1  SharePoint administrator position or failed to promote him, "similarly situated

2  employee[s] *outside the protected class* received the benefit" of those employment

3  decisions. <u>Crownover v. State</u>, 165 Wn. App. 131, 147, 265 P.3d 971 (2011) (emphasis

4  added).⁷ Nor is there any indication that the same manager who made the derogatory

5  comment about Italians also demoted or failed to promote Plaintiff.

6      Even assuming that Plaintiff can cure the pleading deficiencies with respect to his

7  disparate treatment claim, the Court again notes that for claims involving "discrete acts,

8  the limitations period runs from the act itself." <u>See</u> <u>Antonius</u>, 153 Wn.2d at 264. In other

9  words, with respect to the disparate treatment claim, the Court cannot consider any

10 discrete act outside of the limitations period "even if it relates to acts alleged in timely

11 filed charges." <u>Id</u>.

12     To the extent that Plaintiff asserts a hostile work environment claim based on

13 national origin discrimination,⁸ <u>see</u> FAC at ¶¶ 4.23–4.24, Plaintiff appears to exclusively

14 rely on the manager's comment about Italians, <u>id</u>. at ¶ 3.25. Apart from a separate

15 comment regarding a "Polish salute," which was not directed at Plaintiff and apparently

16 has nothing to do with his national origin, the other alleged discriminatory conduct is

---

⁷ Although Plaintiff alleged in connection with his federal claim that "the positions [Plaintiff] applied to, [were] at all times awarded to someone inferior than" Plaintiff, <u>see</u> FAC at ¶ 4.66, that assertion does not indicate whether those employees were outside the protected class or doing substantially the same work as Plaintiff.

⁸ "To establish a prima facie hostile work environment claim, a plaintiff must show the following four elements: (1) the harassment was unwelcome, (2) the harassment was because [plaintiff was a member of a protected class], (3) the harassment affected the terms and conditions of employment, and (4) the harassment is imputable to the employer." <u>Loeffelholz</u>, 175 Wn.2d at 275.

unrelated to this claim. <u>See</u> FAC at ¶¶ 3.2–3.24. The manager's one-time comment about Italians was a "[c]asual, isolated, or trivial incident," which does "not affect the terms or conditions of employment to a sufficiently significant degree to violate the law." <u>See</u> <u>Crownover</u>, 165 Wn. App. at 146. The remaining alleged conduct is merely "[e]mbarrassment, humiliation or mental anguish from nondiscriminatory harassment," which is insufficient to state a WLAD claim for discrimination. <u>Id</u>. (quoting <u>Adams v. Able Bldg. Supply, Inc.</u>, 114 Wn. App. 291, 298, 57 P.3d 280 (2002)). Plaintiff has failed to provide sufficient context for the manager's comment about Italians and has otherwise failed to allege facts suggesting that the treatment was "so extreme as to amount to a change in the terms and conditions of employment." <u>Crownover</u>, 165 Wn. App. at 146 (citation omitted); <u>see also</u> <u>Alonso v. Qwest Comms. Co.</u>, 178 Wn. App. 734, 747, 315 P.3d 610 (2013) ("The WLAD is not intended as a general civility code . . . [a]nd not everything that makes an employee unhappy is an actionable adverse action.").

Because the allegations are insufficient to plausibly state claims for disparate treatment or hostile work environment, the First Cause of Action is DISMISSED without prejudice.

### ii. Constructive Discharge

Plaintiff's claim for constructive discharge (Sixth Cause of Action) is treated as a claim for wrongful discharge in violation of public policy based on constructive discharge, but the facts alleged do not support that legal theory. Plaintiff labels this claim as one for "constructive discharge," <u>see</u> FAC at ¶ 4.40, but "Washington law does not recognize a cause of action for *constructive* discharge; rather the law recognizes an action

for *wrongful* discharge which may be either express or constructive." <u>Snyder v. Med. Serv. Corp. of E. Wash.</u>, 145 Wn.2d 233, 238, 35 P.3d 1158 (2001) (en banc). Although Plaintiff's factual allegations are sufficient to put Boeing on notice that Plaintiff is in fact asserting a claim for wrongful discharge in violation of public policy based on constructive discharge, <u>see</u> FAC at ¶¶ 4.40–4.43; Fed. R. Civ. P. 8(a)(2), Plaintiff must nevertheless plead *all* of the elements of a wrongful discharge claim, including "that a stated public policy, either legislatively or judicially recognized, may have been contravened." <u>Snyder</u>, 145 Wn.2d at 239.[9]

More critically, to support such a theory, Plaintiff must also allege facts plausibly "show[ing] that [Boeing] engaged in a deliberate act, or a pattern of conduct, that made working conditions so intolerable that a reasonable person would have felt compelled to resign." <u>Barnett</u>, 174 Wn. App. at 485. "This is an objective standard and an 'employee's subjective belief that he had no choice but to resign is irrelevant.'" <u>Id</u>. (citation omitted).

Plaintiff cites several examples of deliberate conduct that allegedly made his working conditions intolerable. <u>See</u> FAC at ¶¶ 3.2–3.30. Plaintiff alleges that before

---

[9] Boeing misconstrues Plaintiff's claim for "national origin constructive discharge" as a WLAD claim and argues that it is duplicative of the WLAD claim for "national origin disparate treatment." Motion to Dismiss (docket no. 15 at 13). The FAC, however, references the "common law tort of constructive discharge whereby an employee who quits can establish a wrongful termination," and relies exclusively on case law involving claims for wrongful discharge in violation of public policy. FAC at ¶ 4.41. Plaintiff is permitted to plead alternative theories of liability at this stage in the proceedings. <u>See</u> Fed. R. Civ. P. 8(d)(3); <u>see also</u> <u>Piel v. City of Federal Way</u>, 177 Wn.2d 604, 614–15, 306 P.3d 879 (2013) (en banc) (recognizing the "long line of precedent allowing wrongful discharge tort claims to exist alongside sometimes comprehensive administrative remedies").

resigning, he took a leave of absence to deal with his "severe anxiety affecting his sleep, asthma, health, and voice" due to the "prolonged stress from the aggressive tormenting" and other treatment. <u>Id</u>. at ¶ 3.29. Plaintiff also alleges that "he felt he had no choice but to resign" after human resources found that his report of discrimination, filed in late January 2018, was "unfounded." <u>Id</u>. at ¶¶ 3.25, 3.30. Even assuming that the conduct alleged was objectively "intolerable," Plaintiff apparently resigned just a few weeks after first reporting the national origin discrimination to Boeing, and while on a leave of absence. Plaintiff does not explain why the leave of absence was insufficient to improve the working conditions, and he apparently did not appeal or otherwise challenge the dismissal of his discrimination report. Based on these allegations, even drawing all inferences in Plaintiff's favor, the Court concludes that the alleged facts do not support a claim that a reasonable person would have felt compelled to resign. <u>See</u> <u>Molsness v. City of Walla Walla</u>, 84 Wn. App. 393, 399, 928 P.2d 1108 (1996) (concluding that a plaintiff facing the threat of termination may have "subjectively believed that he had no choice but to resign," but "[o]bjectively, he did have a choice . . . to 'stand pat and fight'"). The Sixth Cause of Action is DISMISSED without prejudice.

            **iii.**        **IIED**

Plaintiff's allegations are also insufficient to state a claim for IIED (Eighth Cause of Action), also known as the tort of outrage, which requires "a plaintiff [to] show '(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress.'" <u>Snyder</u>, 145 Wn.2d at 242 (quoting <u>Birklid v. Boeing Co.</u>, 127 Wn.2d 853, 867, 904 P.2d 278 (1995)).

1  "[T]he conduct in question must be *so outrageous in character, and so extreme in degree,*

2  *as to go beyond all possible bounds of decency, and to be regarded as atrocious, and*

3  *utterly intolerable in a civilized community*." *Id.* (quoting *Birklid*, 127 Wn.2d at 867)

4  (emphasis in original). For the same reasons that the allegations supporting the wrongful

5  discharge claim fall short, the conduct alleged in the FAC does not plausibly assert that

6  Boeing's conduct was so outrageous in character, or so extreme in degree, to justify

7  liability for IIED. The Eighth Cause of Action is DISMISSED without prejudice.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendant's Motion to Dismiss, docket no. 15, is GRANTED as follows:

    (a) With regard to Plaintiff's federal claims for (i) disability discrimination under the ADA (Second Cause of Action), (ii) hostile work environment under Title VII (Fourth Cause of Action), (iii) retaliation under Title VII (Fifth Cause of Action), (iv) failure to maintain a harassment-free environment under Title VII (Seventh Cause of Action), and (v) national origin discrimination under Title VII (Ninth Cause of Action), the motion is GRANTED, and these federal claims are DISMISSED **with** prejudice;

    (b) With regard to the WLAD claim for disability discrimination (Third Cause of Action), the motion is GRANTED, and this claim is DISMISSED **with** prejudice as time barred; and

    (c) With regard to Plaintiff's state law claims for (i) national origin discrimination under WLAD (First Cause of Action), (ii) wrongful discharge (Sixth

Cause of Action), and (iii) IIED (Eighth Cause of Action), the motion is GRANTED, and these claims are DISMISSED, **without** prejudice and with leave to amend, for failure to state a claim. Plaintiff shall electronically file any amended complaint with regard to these three claims, via the Case Management / Electronic Case Filing ("CM/ECF") system, on or before **June 15, 2021**. Any response is due within fourteen (14) days after the amended complaint is filed. *See* Fed. R. Civ. P. 15(a)(3).

(2) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 14th day of May, 2021.

*[signature: Thomas S. Zilly]*

Thomas S. Zilly
United States District Judge